# AFFIDAVIT

I, David Smith, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 720-651-3688 [with International Mobile Subscriber Identity 310260956173331] (the "Target Cell Phone"), and the location of the cellular telephone assigned call number 720-999-2929 [with International Mobile Subscriber Identity 310260161117553] (the "2nd Target Cell Phone") the service provider for both cellular telephones is T-Mobile USA, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey. The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile USA to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  *See* 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the

information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the Drug Enforcement Administration, and have been since September 2004.  I am currently assigned to the Glenwood Springs Post of Duty and assigned to investigate illicit drug trafficking organizations in and around the Western Slope of Colorado.  I have participated in and/or conducted countless investigations involving the possession, manufacture, distribution, and importation of controlled substances.  I have utilized various techniques and resources for these investigations including the use of informants and cooperating individuals, undercover operations, physical and electronic surveillance, pen registers, wiretaps, and the analyses of telephone records.  These investigations have resulted in the authoring, planning, and execution of search warrants, and the execution of arrest warrants leading to the arrests of multiple defendants involved in said investigations.  I have interviewed and debriefed various narcotics traffickers and cooperating sources.  Based upon my training and experience, and professional interaction with other law enforcement personnel, I have become familiar with the methods and techniques used by narcotics traffickers to smuggle, safeguard, and distribute narcotics, and the methods and techniques used to collect and launder the proceeds derived from the distribution of narcotics.  I am also familiar with the methods and techniques employed by drug traffickers to thwart detection by law enforcement, including the use of false and/or fictitious identities, counter surveillance techniques, cellular telephone technology and/or electronic communication devices, coded conversations and/or communications, and elaborate smuggling schemes.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1), Possession with intent to distribute and distribution of a controlled substance, Title 21, United States Code, Section 846, conspiracy to possess with intent to distribute and distribution of a controlled substance have been committed, are being committed, and/or will be committed by Alan Ordonez Medina, Jesus Lopez Millan, Pedro Armendariz Chacon, Leonel Melendez Camacho and Ignacio Farias Hernandez. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7. The United States, including the Drug Enforcement Administration (DEA), is conducting a criminal investigation of Alan Ordonez Medina, Jesus Lopez Millan, Pedro Armendariz Chacon, Leonel Melendez Camacho and Ignacio Farias Hernandez regarding possible violations of Title 21, United States Code, Section 841(a)(1), Possession with intent to distribute and distribution of a controlled substance, Title 21,

United States Code, Section 846, conspiracy to possess with intent to distribute and distribution of a controlled substance.

8.  Between February 17 and 20, 2019, I received information from a Confidential Source of Information (hereafter referred to as CS) regarding the drug trafficking activities of an individual known to the CS as Alan aka "Guero." The CS reported that "Guero" is a source of supply for heroin in Denver, Colorado. The CS provided telephone numbers 720-651-3688 (the "Target Cell Phone") and 720-999-2929 (the "2nd Target Cell Phone") for "Guero." The CS had been arranging for "Guero" to deliver a kilogram of heroin to Eagle or Garfield County, Colorado.

9.  On February 18, 2019, I provided telephone number 720-651-3688 (the "Target Cell Phone") and the name "Guero" to Two Rivers Drug Enforcement Task Force (hereafter referred to as TRIDENT) Commander Dave Moreno. TRIDENT is the local drug task force in Garfield County, Colorado. I requested Commander Moreno, to act in an undercover capacity, to contact "Guero" and arrange for the delivery of heroin from Denver, to either Garfield or Eagle County, Colorado.

10.  On February 18, 2019, Commander Moreno contacted "Guero" at 720-651-3688 (the "Target Cell Phone"). "Guero" informed Commander Moreno that "Guero" was driving from Denver, Colorado, to Utah on February 18, 2019, and "Guero" wanted to meet with Commander Moreno to discuss the possible heroin transaction. Commander Moreno and "Guero" agreed to meet at approximately 8:00 pm on February 18, 2019, at the Kum & Go located in Silt, Colorado. At approximately 8:37 pm, Commander Moreno received a phone call from "Guero" who stated that he ("Guero") had stopped in Silt, but he did not have phone reception, so "Guero"

4

continued to drive to Utah.  Commander Moreno and "Guero" did not meet on February 18, 2019.

11.     I also received information from the CS that "Guero" was transporting illegal drugs from Denver, Colorado, to Las Vegas, Nevada, on February 18, 2019.

12.     On February 19, 2019, Commander Moreno contacted "Guero" via telephone number 720-651-3688 (the "Target Cell Phone") at approximately 5:39 p.m., "Guero" said he was on his way back from Utah and that he wanted to stop and meet with Commander Moreno on his way back to Denver.  Commander Moreno agreed to meet "Guero" and asked "Guero" to notify Commander Moreno when "Guero" was close to the Glenwood Springs, Colorado area.  Commander Moreno never heard back from "Guero" on February 19, 2019, therefore Commander Moreno and "Guero" did not meet on February 19, 2019.

13.     On February 20, 2019, Commander Moreno received a telephone call from an unknown individual, later identified as Jesus Lopez Millan who was utilizing telephone number 720-809-2746.  Lopez Millan, speaking in Spanish, informed Commander Moreno that Lopez Millan would be the individual delivering the package, heroin, to Commander Moreno.  Lopez Millan informed Commander Moreno that Lopez Millan would deliver 40 "balls."  Each one with "25."  Based on my training and experience, I believe Lopez Millan informed Commander Moreno that Lopez Millan would deliver 40 packages, each containing 25 grams of heroin.   This would total one kilogram, or 1000 grams, of heroin.  Lopez Millan also informed Commander Moreno the cost of the heroin was $32,000 plus a $1,000 delivery fee.  Commander Moreno and

Lopez Millan agreed to meet at 3:00 pm on February 20, 2019, at the Glenwood Springs Mall in Glenwood Springs, Colorado.

14.    Starting at approximately 6:00 pm, on February 20, 2019, Commander Moreno had an initial meeting with Pedro Armendariz Chacon and Lopez Millan at the Glenwood Springs Mall. During this first meeting, Armendariz Chacon and Commander Moreno had a disagreement because Armendariz Chacon wanted to verify that Commander Moreno had the money and Commander Moreno wanted to verify that Armendariz Chacon and Lopez Millan had the heroin. After a short meeting, Armendariz Chacon and Lopez Millan departed the area. At approximately 6:50 pm, Commander Moreno again met with Armendariz Chacon in the mall parking lot, during this second meeting Lopez Millan was not present. During this second meeting, Armendariz Chacon supplied Commander Moreno with approximately one ounce of heroin. At this time, Armendariz Chacon was taken into custody by law enforcement. The ounce of heroin and a handgun were seized at this time.

15.    While law enforcement was trying to locate Lopez Millan in the area of the mall, law enforcement encountered two additional individuals identified as Leonel Melendez Camacho and Ignacio Farias Hernandez. Commander Moreno asked Melendez Camacho and Farias Hernandez where they were from and they stated, "Denver." Commander Moreno asked what they were doing in Glenwood Springs and Melendez Camacho stated they were with a friend that was trying to sell a truck and they were going to give the fried a ride back from Denver. Due to the conversation with Melendez Camacho and Farias Hernandez, Commander Moreno believed they were involved with Armendariz Chacon and Lopez Millan and they were detained pending the

ongoing investigation. Commander Moreno learned that Melendez Camacho was in possession of a set of keys for a white Ford F-150. Commander Moreno observed in the bed of the white Ford F-150 pickup truck a cooler that had been turned on its side and ice and soda cans were next to the cooler. Commander Moreno also observed a clear plastic bag containing numerous "balls" of heroin. Melendez Camacho and Farias Hernandez were arrested at this time. A short time later, Lopez Millan was taken into custody inside a store located at the Glenwood Springs Mall. The clear plastic bag seized from the bed of the Ford F-150 weighed in excess of 1000 gross grams of a substance believed to be heroin.

16. During a post Miranda interview with Lopez Millan, Lopez Millan identified the owner of the heroin as "Alan." Lopez Millan also stated that "Alan" had supplied the firearm to Armendariz Chacon. Lopez Millan stated he was selling the heroin for "Alan" because "Alan" had threatened Lopez Millan.

17. In a post arrest statement, Armendariz Chacon stated that Lopez Millan had supplied Armendariz Chacon with the heroin and the firearm. Armendariz Chacon stated that Lopez Millan had instructed Armendariz Chacon to use the firearm for protection if Commander Moreno tried to hurt him during the heroin transaction.

18. I have issued a DEA Administrative subpoena to T-Mobile USA for subscriber and toll information for telephone number 720-651-3688 (the "Target Cell Phone"). In a response from T-Mobile USA, the subscriber for this telephone was not identified.

19. I have issued a DEA Administrative subpoena to T-Mobile USA for subscriber and toll information for telephone number 720-999-2929 (the "2nd Target Cell

Phone"). In a response from T-Mobile USA, the subscriber for this telephone was identified as Alan Medina at 5540 E 67th Place, Commerce City, Colorado.

20. On February 21, 2019, I provided a photograph of Alan Ordonez Medina via text message to the CS that originally provided the information regarding "Guero." When asked if the person in the photo was "Guero," the CS responded "Simon" and "si." Based on this exchange of text messages, I believe the CS was identifying Alan Ordonez Medina as "Guero."

21. Based on the information provided that "Guero" was traveling to Utah or Las Vegas, Nevada, on the night of February 18, 2019, and returning to Denver, on February 19, 2019, it is believed that historical cell site information for the "Target Cell Phone" and the "2nd Target Cell Phone" can possibly corroborate the identity of Medina as "Guero."

22. In my training and experience, I have learned that T-Mobile USA is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular

telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

23. Based on my training and experience, I know that T-Mobile USA can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile USA's network or with such other reference points as may be reasonably available.

24. Based on my training and experience, I know that T-Mobile USA can collect historical and prospective cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as T-Mobile USA typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of a fugitive, of co-conspirators, and/or victims.

## AUTHORIZATION REQUEST

25.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

26.     I further request that the Court direct T-Mobile USA to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on T-Mobile USA, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

27.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic

information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

28.     I further request that the Court direct T-Mobile USA to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile USA.  I also request that the Court direct T-Mobile USA to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile USA's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile USA's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

29.     I further request that this Court order the T-Mobile USA not to notify the subscriber of the existence of the warrant; the requested warrant relates to an investigation of violations of Title 21.  It is believed of Alan Ordonez Medina is notified of the investigation, he could flee from prosecution or attempt to intimidate witnesses.  See 18 U.S.C. § 2705(b)(2), (3), (5).

30.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Respectfully submitted,

*s/ David Smith*
David Smith
Special Agent
Drug Enforcement Administration

Submitted, attested to, and acknowledged by reliable electronic means on March __18__, 2019

_____
GORDON P. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

**Reviewed and Submitted by Pete Hautzinger, Assistant United States Attorney.**